## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Tonita Cervantes, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Morton County, North Dakota; City of | ) | |
| Mandan, North Dakota; Kyle | ) | |
| Kirchmeier, Sheriff of Morton County | ) | |
| North Dakota in his individual capacity; | ) | |
| Tricia Schmeichel, Mandan Police | ) | |
| Officer in her individual capacity; | ) | |
| Dion Bitz, Morton County Deputy Sheriff | ) | |
| in his individual capacity; Unknown law | ) | |
| enforcement officers John Does 1 through | ) | |
| 3 in their individual capacities. | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

NOW COMES Plaintiff Tonita Cervantes by and through counsel, Patricia Handlin of

Handlin Law Office and Melinda Power of West Town Law Office, complaining of Defendants,

the City of Mandan, North Dakota; the County of Morton, North Dakota, Kyle Kirchmeier, Sheriff,

Morton County North Dakota in his individual capacity; Tricia Schmeichel, City of Mandan Police

Officer in her individual capacity; Dion Bitz, Morton County Deputy Sheriff in his individual

capacity: and unknown law enforcement officers John Does 1 through 3 for their violations of

Plaintiff's constitutional rights, including those protected by the First, Fourth, and Fourteenth

Amendments, and for related state law violations. In support, Plaintiff alleges as follows:

## INTRODUCTION

On February 22, 2017, Plaintiff, a photojournalist, was filming, recording and documenting

the actions of a group of law enforcement officers and their interaction with approximately fifty

- 1 -

individuals who were demonstrating against the construction of the Dakota Access Pipeline, on North Dakota Highway 1806 south of Backwater Bridge in Morton County, North Dakota.  North Dakota Highway 1806 is a public roadway which was then temporarily closed to vehicular traffic at that location but open to pedestrians and there were no vehicles on the road there.  On North Dakota Highway1806, south of Backwater Bridge, Defendants Mandan Police Officer Tricia Schmeichel, Morton County Deputy Sheriff Dion Bitz and other unknown law enforcement officers, designated herein as John Does 1-3, arrested Plaintiff Tonita Cervantes. Plaintiff was charged with Intentional Obstruction of a Governmental Function in violation of the North Dakota Century Code Section 12.1-08-01, based on the sworn affidavits of Defendants Bitz and Schmeichel.

At the time of her arrest, Plaintiff was standing at the west edge of the public roadway near other journalists and Water Protectors, in a public space where Plaintiff had a legal right to be. She was engaged as a photojournalist in protected First Amendment activity. She was wearing clothing which clearly identified her as a member of the press. Nonetheless, law enforcement officers, including Defendants Schmeichel, Bitz, and Does 1-3, ran at Plaintiff, surrounded, grabbed, seized, arrested and handcuffed her with zip ties. The zip ties were put on Plaintiff in an extremely tight and painful manner and had to be cut off and replaced with a new set of zip ties three separate times.

Plaintiff was charged and taken to a large garage of the Morton County Jail complex and placed in an enclosure resembling a dog cage. Morton County Jail personnel forced Plaintiff to strip down to one layer of clothing in front of both male and female officers. They then took Plaintiff out of the Morton County Jail complex and transported her three hours to another jail near the Canadian border.  Jail personnel refused to tell Plaintiff where she was being taken when she asked.

Her photographic equipment and phone were seized upon her arrest and not returned until March 1, 2017 only after counsel for the National Press Photographer's Association wrote a letter to the Morton County States Attorney demanding its release.

After arriving at  Devil's Lake Correctional Facility, she was told she was "uncooperative" for asking to make her one phone call and told "criminals don't have rights." She was given for sleeping on the floor only a thin blanket and a hard plastic multi-purpose object used to carry dead bodies out when someone dies on the cellblock.

On April 27, 2017, Morton County District Judge Bruce A. Romanick dismissed the charge for lack of probable cause.  On May 25, 2017, Morton County appealed the dismissal of the charge against Plaintiff. On July 6, 2018, Morton County voluntarily withdrew the appeal, and on July 9, 2018, the North Dakota Supreme Court ordered the dismissal to stand.

Plaintiff violated no law while engaging in Constitutionally protected behavior and was compliant with police commands before, during and after her arrest.  At no time did she engage in any violent or otherwise illegal activity. She did nothing to make law enforcement fearful of harm and posed no articulable threat to law enforcement.

After arresting approximately ten individuals, including Plaintiff, law enforcement stopped making arrests and left the scene, leaving the rest of the group of approximately forty demonstrators on the roadway.

Plaintiff was attacked, arrested, imprisoned and prosecuted because she was a photo journalist engaged in Constitutionally protected activity and to retaliate against her for doing so. Her arrest, imprisonment and prosecution were not isolated incidents. They represented part of a pattern, practice and custom of Defendants County of Morton and City of Mandan, directed and sanctioned by the Morton County Sheriff and the City of Mandan Chief of Police to wrongfully and forcibly arrest, imprison and prosecute journalists and other members of the press who were legally

observing and recording the actions of law enforcement during the months of demonstrations at and around Standing Rock, North Dakota in 2016 and early 2017.

Defendants' actions and inactions were objectively unreasonable and undertaken with willfulness and/or reckless indifference to Plaintiff's rights; were a direct and proximate cause of physical, and emotional pain and injury to Plaintiff, and chilled her exercise of her First Amendment rights by making her fearful of covering future protests.

**PARTIES**

1. Plaintiff Tonita Cervantes is a resident of the State of Oregon and a citizen of the United States.

2. Defendant County of Morton is a unit of local government under the laws of the State of North Dakota and is the employer and principal Defendants Sheriff Kyle Kirchmeier and Deputy Sheriff Dion Bitz. Morton County is a body corporate for civil purposes and subject to suit under N.D. Cent. Code § 11-10-01, and is responsible for the policies, practices and customs of the Sheriff of Morton County and of the Morton County's Sheriff's Department.

3. Defendant Kyle Kirchmeier was at all relevant times to this action the Sheriff of Morton County, North Dakota and was one of the incident commanders for the law enforcement response to the Water Protectors' DAPL demonstration on February 22, 2017.

4. At all times relevant to this action, Defendant Kirchmeier was an authorized Morton County policymaker for law enforcement matters and had ultimate decision-making authority over Morton County's law enforcement response to the Water Protectors' DAPL demonstrations. Defendant Kirchmeier is sued in his individual capacity.

5. Defendant City of Mandan is a unit of local government under the laws of the State of North Dakota and is a body corporate for civil purposes and subject to suit under N.D. Cent. Code § 11-10-01, and is responsible for the policies, practices and customs of the Mandan Police

Department.

6. Defendant Schmiechel was at all times relevant to this action employed as a law enforcement officer by the City of Mandan Police Department.  She is sued in her individual capacity.

7. Defendant Deputy Sheriff Dion Bitz was at all times relevant to this action employed as a law enforcement officer by the Morton County Sheriff's Office.  He acted under the command of Defendant Kirchmeier and the Morton County Sheriff's Office to engage in the conduct further described in this Complaint and is sued in his individual capacity.

8. Defendants unknown Law Enforcement Officers Doe 1 through 3 acted under the command of Defendant Kirchmeier and the Morton County Sheriff's Office to engage in the conduct described in this Complaint. These Defendants are sued in their individual capacities.

9. Defendant officers engaged in the conduct complained of in the course and scope of their employment and under color of law.

## JURISDICTION AND VENUE

10. This Action arises under the First, Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §§ 1983 and 1988, and the laws of the State of North Dakota.

11. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and § 1343. This Court has supplemental jurisdiction under 28 U.S.C. § 1332 and § 1367(a) over claims arising under North Dakota state law. Venue is proper under 28 U.S.C. § 1391(b).  Defendants Morton County and City of Mandan are units of local government located within this judicial district. and the events giving rise to the claims asserted herein occurred in this district as well.

## FACTS

12. The Dakota Access Pipeline (DAPL) is a 1,168-mile-long crude oil pipeline constructed and owned by Energy Transfer, Inc. (ET)  It crosses under the Missouri River less than one mile upstream of the Standing Rock Sioux Reservation and the source of their drinking water.

13. Since 2014, the Standing Rock Sioux Tribe, both through available legal channels and public demonstration, has opposed construction of the pipeline, which was constructed through unceded sacred ancestral lands.

14. In December 2016, the United States Army Corps of Engineers announced that they would deny the permit or easement to ETP to route DAPL under the Missouri River.

15. Then, on February 8, 2017, the United States Army Corps of Engineers reversed itself and, without having conducted an Environmental Impact Statement, allowed an easement to ETP to construct the pipeline under the Missouri River despite the Tribe's public and legal objections, which included federal litigation in *Standing Rock Sioux v. Army Corps of Engineers.*

16. The Court in *Standing Rock Sioux v. Army Corps of Engineers* held that the easement was void and vacated it; the vacatur of the easement was upheld by the D.C Court of Appeals at 985 F.3d 1032 (D.C. Cir. 2021).

17. Construction of DAPL began in 2016 and during that spring, the Standing Rock Sioux Nation issued a call to all Sioux and their allies to peacefully stand in opposition to DAPL, in support of the Nation's sovereignty and treaty rights, and to protect peoples' essential water rights.

18. The camp on Army Corps of Engineers' controlled land at what came to be known as Oceti Sakowin was located east of North Dakota Highway 1806 and a mile south of Backwater Bridge.

19. Representatives of Indigenous nations from around the globe gathered at Oceti Sakowin to support the Tribe's opposition to the construction of pipeline.  In early December 2016, the camp totaled approximately 13,000 water protectors, including 3,000 retired United States military veterans. After the announcement by the US Army Corps of Engineers that

they would deny an easement to run DAPL under the Missouri River and due to a severe blizzard in December 2016, the Standing Rock Sioux Tribal leadership asked protesters to go home; the size of the camp shrank dramatically.

20. In its response to the DAPL demonstrations, the Morton County Sheriff's Office, led by Defendant Kirchmeier, and the City of Mandan, employed and maintained policies, practices, and customs which included using excessive force against, and making unlawful arrests of, water protectors.

21. The Morton County Sheriff's Office and the Mandan Police Department also employed and maintained related policies, practices, and customs which included arresting and charging photojournalists who were engaged in protected First Amendment activities including documenting, photographing, filming, recording, and live streaming the activities of law enforcement and the interaction between law enforcement and protesters.

22. Throughout the DAPL Water Protectors, law enforcement officers from the Morton County Sheriff's Office, the Mandan City Police Department and other law enforcement agencies, acting under the direction and supervision of Defendant Kirchmeier, participated in, maintained and implemented these policies, practices, and customs.

23. On February 22, 2017, approximately fifty protesters and journalists gathered on the public roadway, North Dakota Highway 1806, near Backwater Bridge in Morton County, North Dakota.

24. North Dakota Highway 1806 north of Backwater Bridge was closed to vehicles in late October 2016 and fully reopened on March 17, 2017 and there were no vehicles on the roadway at that time.

25. Plaintiff was one of many journalists and photojournalists who covered the events around the demonstrations against the Dakota Access Pipeline and the law enforcement response,

including the protest that occurred on February 22, 2017 on State Highway 1806.

26. At no time during this incident was there a lawful basis to prevent Water Protectors from being on the public roadway of North Dakota Highway 1806 in the area south of Backwater Bridge where Plaintiff was located.

27. At all relevant times to this Complaint, Plaintiff was acting as a photojournalist and did document, film, live stream and photograph the demonstration, law enforcement and the interaction between law enforcement and the Water Protectors, in the exercise of her First Amendment rights.

28. Plaintiff was dressed in a fluorescent green vest and a bright yellow poncho both of which had "Press" written on them in black bold letters on the front and the back of each garment.

29. Additionally, Plaintiff was carrying equipment she used as a photojournalist, including a Canon 7D DSLR camera, a camera shoulder strap, a Canon 24-70 mm L series lens, approximately 14 flash camera cards with photographs in a neoprene flash disk card case, a 2000 morphia back up phone charger, and a phone.

30. At or around 4:00 p.m., law enforcement officers in full riot gear with batons drawn formed a line across North Dakota Highway 1806 facing south toward the Water Protectors.

31.  At or around 4:00 PM, a law enforcement officer announced once, using a conversational volume and tone of voice, that they would begin to make arrests for violation of the Governor's eviction order of the camp called Oceti Sakowin which was located nearby on Army Corps of Engineers controlled land, not on North Dakota Highway 1806, a clearly inapplicable basis for arrests on State Highway 1806.

32. At that time, Plaintiff was filming and standing with a small group of journalists and

Water Protectors at the west edge of the roadway roughly fifteen feet south of the line of law enforcement officers.

33. In response to the announcement, several individuals who were standing a few feet from where Plaintiff was filming, objected verbally to the law enforcement officers that it was unfair to arrest members of the press who were covering the demonstration.

34. Immediately thereafter, in direct response to that verbal objection, law enforcement officers not dressed in riot gear, followed by several others, including Defendants Schmeichel, Bitz, and the John Does 1-3, ran at Plaintiff, who was clearly designated as press, surrounding, pushing, seizing, and arresting her.

35. The line of riot clad officers had not moved from their position to begin arrests of Water Protectors at that time and remained in formation.

36. At the time of her arrest, Plaintiff was continuing to stand at the western edge of North Dakota Highway 1806 near other journalists, roughly fifteen feet from the line of law enforcement who faced south across the roadway.

37.  Plaintiff  was on a public road, lawfully in a public space where she had a legal right to be.

38. Plaintiff informed Defendants that she was acting in her capacity as a photojournalist as she was being arrested.

39. Plaintiff, who was filming and live streaming the protest prior to and at the time of her arrest, including the officers involved in her arrest, was targeted and arrested by Defendants only because she was acting in the capacity as a photojournalist.

40. Plaintiff presented no threat.

41. Plaintiff did not advance on or threaten the police in anyway.

42. Plaintiff made no threats of verbal or physical violence, nor did she attempt to incite verbal

or physical violence from the other protestors.

43. When Defendants Schmeichel, Bitz, and the John Does 1-3 ran as a group at Plaintiff, they surrounded, seized and then shoved her with no justification, terrorizing her and causing her to suffer fear, pain, and discomfort.

44. At no time did Plaintiff resist, or attempt to elude or evade Defendants.

45. Defendant officers handcuffed Plaintiff very tightly with zip ties, causing her to suffer additional severe pain, and forcibly brought her to a police van. The zip ties had to be cut off and replaced because of the severity of the tightness.

46. Law Enforcement officers transported her to the Morton County Jail complex.

47. As she was being booked, Plaintiff told law enforcement booking officers that she was a photojournalist

48. Plaintiff was placed on a cold concrete floor of a metal cage that resembled a dog kennel in the garage of the Morton County Jail Complex.

49. She was forced by law enforcement to strip down in front of both male and female officers to one layer of underclothing which was a pair of leggings, a light t-shirt and socks, with the howling sub-zero wind blowing in each time the massive garage doors were opened.

50. Several hours later, Plaintiff was removed from the Morton County Jail Complex and transported three hours away to another jail near the Canadian border, the Devil's Lake Correctional Facility. She was handcuffed with hands behind her back and in one layer of clothing, a pair of leggings, a light t-shirt and socks, for the entire trip.

51. She was not told where she was being taken when she asked.

52. At Devil's Lake Correctional Facility, she asked to make a phone call which was denied and she was told by law enforcement, "criminals don't have rights." She was given only a blanket and a hard plastic device used to drag dead bodies out of the cellblock, on the floor

on which to sleep.

53. Plaintiff's requests for food were ignored until close to midnight when she received a plastic container of iceberg lettuce and a small packet of salad dressing, after asking several times for the protein bar in her backpack

54. Plaintiff was released from that facility near the Canadian border without transportation or a phone after appearing remotely for her first court appearance on February 23, 2017.

55. At no time did Defendants or other law enforcement officers advise Plaintiff that she was obstructing a governmental function in violation of North Dakota statutes.

56. When Defendants arrested Plaintiff, she had not violated any law prior to her arrest.

57. None of the Defendant officers had probable cause to believe Plaintiff was or had been violating any law.

58. Plaintiff was cooperative with law enforcement commands before, during and after her arrest.

59. Defendant law enforcement officers arrested Plaintiff, took and kept her in custody, and caused her to be charged and prosecuted even though she was breaking no law and was engaging in Constitutionally protected First Amendment activity.

60. Defendant law enforcement officers seized Plaintiff's photographic equipment, phone and photographs at the time of her arrest and refused to return them to Plaintiff.

61. When plaintiff went to retrieve her photographic equipment, phone and photographs from a Morton County law enforcement officer following her release, explaining that she was a photojournalist, the officer responded that she "was in North Dakota now and they could do whatever they wanted to."

62. Her photographic equipment, photographs and phone were not returned to her until March 1, 2017, after a letter was sent by the National Press Photographer's Association to the

Morton County States Attorney demanding its release.

63. Defendants arrested, charged and held Plaintiff in custody to intimidate, to punish, and to discourage her and others from exercising their First Amendment rights, and in retaliation against her for exercising those rights.

64. Defendants seized and arrested Plaintiff only because she was acting as a photojournalist, filming, recording and documenting the interaction between law enforcement and the protesters.

65. After Plaintiff's arrest, and the arrests of approximately nine other individuals, law enforcement officers stopped making arrests and left the roadway, allowing approximately 40 Water Protectors to remain there and continue their demonstration on North Dakota Highway 1806.

66. Law enforcement, through its Unified Command, including Defendant Kirchmeier, initially gave the order and direction to law enforcement to make the arrests on North Dakota Highway1806 on February 22, 2017.

67. After Plaintiff and nine other individuals were arrested pursuant to that order and direction, Unified Command subsequently made the decision and gave the order to stop arresting the Water Protectors.

68. Unified Command issued the desist order because events, and most particularly law enforcement's illegal and unconstitutional actions, were being filmed and posted on social media.

69. Defendants Bitz and Schmeichel signed affidavits that resulted in Plaintiff being charged with, and prosecuted for, a criminal offense.

70. Plaintiff appeared for a hearing remotely on February 23, 2017, at which time, the case was continued for trial.

71. The decision to continue with the prosecution of the case resulted in Plaintiff having to engage an attorney to represent her.

72. Defendants proceeded with, and did not make any attempt to stop, the prosecution of Plaintiff.

73. Plaintiff's attorney then engaged in discovery, investigation of the criminal case, and filed a Motion to Dismiss for lack of probable cause.

74. On April 27, 2017, Morton County District Judge Bruce A. Romanick granted Plaintiff's Motion to Dismiss and dismissed the charges on the basis of lack of probable cause.

75. Morton County filed a notice of appeal, which they voluntarily withdrew on July 6, 2018.

76. On July 9, 2018, the North Dakota Supreme Court dismissed the appeal.  Plaintiff was thus fully and finally exonerated of the charge arising from her illegal and unconstitutional arrest.

77. Plaintiff was one of at least fifteen journalists and photojournalists who were forcibly arrested and criminally charged without probable cause between August 2016 and February 23, 2017, while covering the demonstrations against the Dakota Access Pipeline in Morton County North Dakota.

78. Like Plaintiff, these journalists and photojournalists were denied return of their photographic equipment upon release for varying periods of time.  They and many Water Protectors after arrest were placed in the metal cages resembling dog kennels, forced to strip down to one layer of clothing, subjected to cold and otherwise extremely uncomfortable conditions in the jail complex and during transport, and transported hours away to distant jails.

79. Law enforcement was not properly trained, *inter alia*, to honor the First Amendment and to refrain from physically and forcefully arresting, charging, imprisoning and causing to be

prosecuted those persons, including but not limited to, photojournalists and other members of the press and media, who were lawfully exercising their rights.

80. Morton County and the City of Mandan, by and through their policy-making law enforcement officials, took no disciplinary or remedial action with regard to any Sheriff or Mandan police officer, or law enforcement officer from any other jurisdiction working under their command.

81. Morton County and the City of Mandan engaged in and approved of the unconstitutional arrest, charging, imprisonment and prosecution of Plaintiff, other journalists, and members of the media and press who were lawfully exercising their First Amendment rights.

82. There was no discipline or remedial action taken with regard to any officer who engaged in the false arrest and/or use of excessive force against journalists and protesters of the Dakota Access Pipeline in Morton County and  their actions were ratified by the City of Mandan and Morton County by and through their policymaking law enforcement officials.

**COUNT I**
**42 U.S.C. § 1983-FIRST AMENDMENT VIOLATIONS**
**(INDIVIDUAL DEFENDANTS)**

83. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

84. Plaintiff was engaged in constitutionally protected conduct by peacefully photographing, filming and documenting the interaction between demonstrators and law enforcement when Defendants Bitz, Schmeichel and John Does 1-3 arrested, imprisoned and prosecuted her without probable cause and/or failed to intervene to stop this misconduct while having the opportunity and duty to do so.

85. Defendants' actions were intended to silence the First Amendment-protected free speech of Plaintiff, to stop Plaintiff from engaging in this protected activity at the time of her arrest, to punish her and retaliate against her for exercising those rights, and to chill her

from engaging in such protected activities in the future, all in violation of her protected First Amendment rights.

86. Defendants arrested Plaintiff because they harbored "retaliatory animus" against Plaintiff because of her exercise of her First Amendment rights as a photojournalist who was filming, documenting and recording interactions between law enforcement and protesters.

87. Defendants' conduct would chill a person of ordinary firmness from continuing to engage in the protected activity.

88.  Defendants' misconduct described in this Complaint was objectively unreasonable and/or was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights.

89. At all relevant times, Defendants were aware that Plaintiff was engaged in constitutionally protected activity when they violated her rights.

90. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income and temporary loss of property.

**WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff demands actual and compensatory damages plus the costs of this action and attorney fees from Defendants Bitz, Schmeichel, and John Does 1-3; in addition, Plaintiff demands punitive damages against each of these Defendants because they acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights, and for whatever additional relief this Honorable Court deems equitable and just.

**COUNT II**
**42 U.S.C. § 1983 - UNREASONABLE SEIZURE, ARREST AND IMPRISONMENT  IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**(INDIVIDUAL DEFENDANTS)**

91. Each of the paragraphs in this Complaint is incorporated as if restated fully herein.

92. The actions and conduct of Defendants Bitz, Schmeichel, and John Does 1-3, as set forth above, in seizing, arresting and imprisoning Plaintiff without probable cause or other lawful basis, and/or failing to intervene to stop this misconduct violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure.

93. Defendants' described actions and conduct were the direct and proximate cause of Defendants' violations of Plaintiff's Fourth Amendment rights and caused Plaintiff bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses.

   **WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff demands compensatory damages, plus the costs of this action and attorney fees from Defendants Bitz, Schmeichel, and John Does 1-3; in addition, Plaintiff demands punitive damages against these Defendants since they acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights, and whatever additional relief this Honorable Court deems equitable and just.

### COUNT III
### 42 U.S.C. § 1983-EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION
### (INDIVIDUAL DEFENDANTS)

94.  Each of the paragraphs in this Complaint is incorporated as if restated fully herein.

95.  As described more fully in the preceding paragraphs, the conduct of Defendants Schmeichel, Bitz and John Does 1-3 when they very roughly surrounded, confronted, and pushed Plaintiff during the process of arresting her, unreasonably handcuffed her tightly and painfully with zip ties, and then caused her to be held in the Morton County Jail complex garage in a metal cage  resembling a dog kennel in very cold conditions, forcing her to strip down to one layer of clothing in front of male and female officers, subjecting her to transport for three hours to a facility near the Canadian border without telling her

where she was being taken while handcuffed behind her back and wearing only a light t-shirt, leggings and socks, where she was given only a light blanket and hard plastic device used to transport bodies for sleeping and where requests for a phone call was refused and request for food was ignored, constituted an excessive and objectively unreasonable use of force in violation of the Fourth Amendment to the U.S. Constitution.

96. Additionally, and/or alternatively, these Defendants failed to intervene to prevent this excessive use of force and mistreatment when having the duty and opportunity to do so.

97. This excessive use of force and mistreatment was also undertaken with willfulness and/or reckless indifference to the rights of Plaintiff.

98. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, and loss of income.

**WHEREFORE**, pursuant to 42 U.S.C. §§1983 and 1988, Plaintiff demands actual or compensatory damages plus the costs of this action and attorney fees from Defendants Bitz, Schmeichel, and John Does 1-3; in addition, Plaintiff demands punitive damages against these Defendants since they acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights, and whatever additional relief this Honorable Court deems equitable and just.

**COUNT IV**
**42 U.S.C. § 1983-MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, (INDIVIDUAL DEFENDANTS)**

99. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

100. Defendants Bitz, Schmeichel, and John Does 1-3 unlawfully arrested Plaintiff without probable cause, while exercising her First Amendment rights, Plaintiff was charged and prosecuted for the alleged obstruction of a governmental function in violation of North

Dakota criminal statutes on the basis of sworn affidavits of Bitz and Schmeichel.

101.  Morton County District Judge Bruce A. Romanick dismissed the charges against
Plaintiff due to lack of probable cause on April 27, 2017 and pursuant to the July 9, 2018
order of the North Dakota Supreme Court, the dismissal without probable cause became
final.

102.  The charging and prosecution of Plaintiff were without probable cause, and the
prosecution was initiated and was caused to be continued with malice and intent by
Defendants Bitz, Schmeichel, and John Does 1-3 in violation of Plaintiff's Fourth and
Fourteenth Amendment rights to be free from malicious prosecution.

103.  As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered
pain, emotional distress, fear, anguish, trauma, loss of liberty, loss of income.

   **WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988 Plaintiff demands actual or
compensatory damages plus the costs of this action and attorney fees from Defendants Bitz,
Schmeichel, and John Does 1-3; in addition, Plaintiff demands punitive damages against these
Defendants since they acted willfully, wantonly and/or in reckless disregard of Plaintiff's
rights, and whatever additional relief this Honorable Court deems equitable and just.

### COUNT V
### 42 U.S.C. §1983- FIRST, FOURTH AND FOURTEENTH AMENDMENT CLAIMS AGAINST DEFENDANT KIRCHMEIER

104.  Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

105.  On February 22, 2017 Defendant Kirchmeier, together with other commanders at the
Unified Command, gave the order and direction to arrest, without probable cause and
in violation of her First Amendment rights, Plaintiff who was lawfully gathered on
North Dakota Highway 1806.

106.  Additionally, and alternatively, he did not intervene to stop the arrest of Plaintiff, despite

having the opportunity and duty to do so, nor did he intervene to stop the wrongful and
malicious imprisonment, charging and prosecution of Plaintiff.

107. As a direct and proximate result of the unreasonable actions and inactions of Defendant
Kirchmeier, Plaintiff suffered the First, Fourth and Fourteenth Amendment violations
and resultant injuries as set forth above.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff demands actual or
compensatory damages plus the costs of this action and attorney fees from Defendant
Kirchmeier; in addition, Plaintiff demands punitive damages against Defendant Kirchmeier
because he acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights, and
whatever additional relief this Honorable Court deems equitable and just.

## COUNT VI
## 42 U.S.C § 1983-CONSPIRACY TO DEPRIVE PLAINTIFF OF HER FIRST, FOURTH AND FOURTEENTH AMENDMENT RIGHTS

108. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

109. Two or more of Defendants Kirchmeier, Bitz, Schmiechel, and John Does 1- 3, acting in
concert with other known and unknown co-conspirators conspired by concerted and joint
action to accomplish an unlawful purpose by unlawful means.

110. Each Defendant took concrete steps to enter into an agreement in February 2017 to
unlawfully use force and to arrest, imprison and prosecute Plaintiff, in order to quell her
constitutionally protected activities as a journalist covering the DAPL protests,  knowing that
they lacked legal justification to do so, and for the purpose of violating Plaintiff's First
Amendment rights to film law enforcement activity and protests as a photojournalist and her
Fourth Amendment rights to be free from the use of excessive force, arrest, imprisonment and
prosecution without probable cause.

111.  In furtherance of this conspiracy, each Defendant committed specific overt acts, including

those set forth in this Complaint, and thereby misused their police powers for the purpose and intent of violating Plaintiff's First, Fourth and Fourteenth Amendment rights.

112. Each individual Defendant is therefore liable for the violation of Plaintiff's rights by any other individual Defendant or conspirator.

113. As a direct and proximate result of this conspiracy and the overt acts taken in furtherance thereto, Plaintiff suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses.

**WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff demands actual or compensatory damages plus the costs of this action and attorney fees from Defendants Bitz, Schmeichel, Kirchheimer and John Does 1-3; in addition, Plaintiff demands punitive damages against these Defendants since they acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights, and whatever additional relief this Honorable Court deems equitable and just.

## COUNT VII
### (42 .S.C. § 1983 – MONELL LIABILITY)

114. Each paragraph of this Complaint is incorporated as if restated fully herein.

115. Defendants City of Mandan and Morton County, before, during and after the unconstitutional arrest of Plaintiff, had in place several related *de facto* policies, practices, and customs, including but not limited to:

a. An unconstitutional pattern and practice of arresting and using excessive force against journalists and photojournalists who were exercising their First Amendment rights by reporting on  the misconduct of law enforcement officers during Standing Rock protests;

b. Subjecting journalists, photojournalists and Water Protectors to confinement in metal cages resembling dog kennels in a garage, forcing them to strip down to one layer of clothing, subjecting them to cold and otherwise extremely uncomfortable conditions in

the jail complex and during transport, transporting them hours away to distant jails, and

denying return of their photographic equipment upon release;

c. Failing to properly discipline law enforcement officers who engaged in violations of the

First and Fourth Amendments by arresting journalists who were reporting on,

photographing or otherwise recording the misconduct of law enforcement officers during

Standing Rock protests and using excessive force during these arrests;

d. Failing to properly train and supervise Mandan and Morton County officers in the specific

areas of the First Amendment rights of Water Protectors  and journalists, the proper use of

force in these circumstances, and the treatment of unarmed persons who present no danger

to themselves, the officers involved, or any other person.

116. The City of Mandan and Morton County, through its policy making law enforcement

officers and other high ranking law enforcement command personnel, including but not

limited to Sheriff Kirchmeier and the Mandan Chief of Police had actual and/or

constructive notice of these patterns, practices and customs, and directed, participated,

acquiesced in, encouraged, ratified and/or otherwise were deliberately indifferent to them.

117. From August 2016 through February 22, 2017, these patterns, practices and customs were

evidenced, *inter alia*, by the arrest, without probable cause, of at least 15 journalists and

other media members who were reporting on the unconstitutional conduct of law

enforcement officers during Standing Rock demonstrations.

118. One or more of the foregoing interrelated policies patterns, practices and/or customs,

were a moving force that proximately and directly caused the violation of Plaintiff's

Constitutional rights, and her consequent injury, and damage as further set forth above.

119. Additionally, and/or alternatively, the actions of Defendant Sheriff Kirchmeier, as alleged

above, as the final Morton County policymaker for law enforcement matters, are directly

attributable to the County for purposes of establishing the County's Monell liability for the violation of Plaintiff's First, Fourth and Fourteenth Amendment rights.

**WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff demands actual or compensatory damages plus the costs of this action and attorney fees from Morton County and the City of Mandan, and whatever additional relief this Honorable Court deems equitable and just.

## COUNT X
## CLAIM FOR INDEMNIFICATION

120. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

121. North Dakota law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. Defendants Kirchmeier, Schmiechel, Bitz, and John Does 1-3 were employees of, or otherwise under the control and direction of, Defendant Morton County and/or the City of Mandan and acting within the scope of their employment in commit the misconduct described herein.

**WHEREFORE,** Plaintiff requests that judgment be entered in favor of her and against Defendants Morton County and/or the City of Mandan for the amounts of any compensatory damages, attorneys' fees and costs awarded against the individual Defendants named in this Complaint.

PLAINTIFF DEMANDS TRIAL BY A JURY.

Dated:

Submitted by:                          By: /s/ Patricia Handlin
                                       Handlin Law Office
                                       Patricia Handlin, Attorney
                                       1180 N. Milwaukee Avenue, third floor
                                       Chicago, Illinois 60642
                                       Phone. 773-255-4331
                                       Handlinlaw@aol.com

By:  /s/ Melinda Power
Melinda Power, Attorney
West Town Law Office
2502 W Division
Chicago, Illinois 60622
Phone. 773-278-6706
F. 773/278-0635
MelindaPower1@gmail.com