IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

CIVIL NO. 1:22-CV-00211

| | |
|---|---|
| Tonita Cervantes, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Morton County, North Dakota; City of Mandan, North Dakota; Kyle Kirchmeier, Sheriff of Morton County North Dakota in his individual capacity; Tricia Schmeichel, Mandan Police Officer in her individual capacity; Dion Bitz, Morton County Deputy Sheriff in his individual capacity; Unknown law enforcement officers John Does 1 through 3 in their individual capacities. | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

\*\*\*           \*\*\*           \*\*\*

Defendants Morton County, City of Mandan, Kyle Kirchmeier, Tricia Schmeichel, and Dion Bitz, sued in their individual capacities ("Defendants") submit this memorandum of law in reply to *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss* (doc. 34) ("Plaintiff's Brief"), and in support of *Defendants' Motion to Dismiss* (doc. 16).

As a preliminary matter, throughout Plaintiff's Brief, Plaintiff asserts Defendants "do not contest" various allegations contained in Plaintiff's Brief. This is not correct. As the Court is required to accept as true the allegations of pure fact contained in Plaintiff's Brief in the context of Defendants' pending Rule 12 motion unless contrary to materials for which the Court may take judicial notice, Defendants' *Memorandum of Law in Support of Defendants' Motion to Dismiss* (doc. 17) ("Principal Brief") merely reiterates Plaintiff's allegations for purposes of framing the issues before the Court.

1

Defendants continue to rely upon their arguments contained in the Principal Brief and provide the following additional specific responses to Plaintiff's Brief.

## I.     Plaintiff's Arrest Was Supported By Probable Cause

Plaintiff's principal argument is that North Dakota Highway 1806 at the location and time where Plaintiff alleges she was arrested was not closed to pedestrian traffic. Plaintiff argues the Governors' evacuation orders did not encompass Highway 1806 at this Morton County location, and that Highway 1806 at this location had been reopened to Plaintiff on February 13, 2017, prior to her February 22, 2017 arrest. As a result, Plaintiff argues her apprehension and arrest at that location was not supported by probable cause. All of these arguments are without merit.

In relation to the defined evacuation area, Plaintiff quotes language from the recitals (i.e. beginning with "WHEREAS") within Governor Burgum's 2017-01 Executive Order issued February 15, 2017 (doc. 18-13) and former Governor Dalrymple's 2016-08 Executive Order (doc. 18-11) which merely described the location where people were unlawfully gathered. The actual evacuation area was defined as follows:

> **NOW, THEREFORE**, I, Doug Burgum, Governor of the State of North Dakota, order a mandatory evacuation of all persons occupying and residing in the evacuation area, specifically defined as the areas in Morton County and Sioux Counties adjacent to the Cannonball River, under the proprietary jurisdiction of the United States Army Corps of Engineers. . . . .

(Doc. 18-13 at p. 1 [bold in original].) This defined evacuation area was not limited to areas "east of North Dakota Highway 1806" referenced in the recitals. Former Governor Jack Dalrymple's earlier Executive Order 2016-08 issued November 28, 2016 (doc. 18-11) had previously ordered the mandatory evacuation of an evacuation area located only in Morton County as follows:

> **NOW, THEREFORE**, I, Jack Dalrymple, Governor of the State of North Dakota, order a mandatory evacuation of all persons located in areas under the proprietary jurisdiction of the United States Army Corps of Engineers located in Morton County, and defined as a prohibited area in Exhibit A of the United States Army Corps of Engineers

>memorandum provided to the Morton County Sheriff on November 25th, 2016 and attached to this order.

(Doc. 18-11 at p. 1 [bold in original].)  The map attached to the November 2016 Executive Order as Exhibit A depicts the referenced "prohibited area" (i.e. area within the proprietary jurisdiction of the United States Army Corps of Engineers ["USACE"]) as encompassing not only all property located east of Highway 1806 and south of the Cantepeta Creek and north of the Cannonball River, but also property located west of Highway 1806 between those two bodies of water (i.e. lands within the proprietary jurisdiction of the USACE).  Highway 1806 at the location of Plaintiff's arrest traversed property within the proprietary jurisdiction of the USACE.

In addition, aside from the definition of the evacuation area, Governor Burgum's 2017 evacuation order further directed as follows:

>I further direct state agencies and the agencies of the state's political subdivisions to restrict access to the evacuation area to all parties not authorized by the Superintendent of the Highway Patrol, . . . .

(Doc. 18-13 at p. 2.)  Plaintiff does not allege she was authorized by the Superintendent of the Highway Patrol to have access to the evacuation area, and she was not so authorized.  Her removal from the vicinity was authorized, ordered and justified.  The Governor's 2017 evacuation order ordered all persons "to leave the area no later than 2 p.m. on . . . February 22, 2017".  (Doc. 18-13 at p. 2.)  Plaintiff admits "[a]t around 4:00 PM, a law enforcement officer announced once, using a conversational volume and tone of voice, that they would begin to make arrests for violation of the Governor's eviction order . . . ."  (Doc. 1 at p. 8, ¶ 31.)  Plaintiff admits "[i]n response to the announcement, several individuals who were standing a few feet from where Plaintiff was filming, objected verbally to the law enforcement officers that it was unfair to arrest members of the press who were covering the demonstration["] (*id.* at ¶ 33), and "[i]mmediately thereafter, in direct response to that verbal objection, law enforcement officers not dressed in riot gear, followed by

several others, including Defendants Schmeichel, Bitz, and the John Does 1-3, ran at Plaintiff, who was clearly designated as press, surrounding, pushing, seizing, and arresting her[]" (*id.* at ¶ 34). In other words, Plaintiff admits she was warned she would be arrested if she remained, yet remained while others in her immediate vicinity clearly indicated their refusal to vacate the area, and was arrested thereafter – clear evidence of probable cause to arrest for obstruction of a government function of enforcing the Governor's February 15, 2017 evacuation order.  Plaintiff's argument that Highway 1806 as that was the only means to leave the evacuation area fails to note Plaintiff, and everyone else without authorization from the Superintendent of the Highway Patrol, were supposed to have left at least two hours prior to Plaintiff's arrest, and Plaintiff admits she was within a crowd expressly asserting a refusal to comply with law enforcement's direction to leave following a warning of impending arrest.

Plaintiff's reliance upon the February 13, 2017 press release by the North Dakota Joint Information Center entitled "Changes to ND 1806 road closure" (doc. 34-1) is misplaced.  That press release provides as follows:

> The North Dakota Department of Transportation (NDDOT) along with the North Dakota Highway Patrol and Morton County Sheriff's Department has changed the closure point on ND Highway 1806 south of Mandan to County Road 135. ND 1806 will be open from Mandan to the junction of County Road 135, just north of the town of Ft. Rice. This allows eight more miles of open highway.  The highway remains closed for approximately 10 miles from Ft. Rice to the Cannon Ball city junction.  Local residents are allowed.  Other motorists should use ND 6 as an alternative route.

(Doc. 34-1.)    First, the location where Plaintiff alleges she was arrested on Highway 1806 was south of Ft. Rice and north of the Cannon Ball city junction – the portion of Highway 1806 which remained closed.  Second, Plaintiff expressly alleges she is a resident of Oregon. (Doc. 1 at p. 4, ¶ 1.)  Therefore, the reference to "[l]ocal residents are allowed" had no application to Plaintiff.  Third, this press release was issued before Governor Burgum's February 15, 2017 evacuation order

was issued, and a general proclamation by the NDDOT and law enforcement as to road closures could never trump the Governor's evacuation order in any event.

Plaintiff's factual admissions, along with those matters this Court must or may take judicial notice of establish Plaintiff had no lawful right to be present where she was arrested and that her arrest was supported by probable cause. As explained by the Supreme Court of the United States:

> To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citations and quotation marks omitted).

Plaintiff's allegation the Morton County District Court determined there was no probable cause to arrest Plaintiff is false. The criminal proceedings against Plaintiff are embraced by Plaintiff's Complaint (doc. 1 at ¶¶ 74-76), and Plaintiff purportedly relies upon the determination of Judge Romanick in dismissing the criminal charge against Plaintiff in opposing Defendants' pending Rule 12 motion (Plaintiff's Brief [doc. 34] at p. 19 ["A North Dakota Circuit Court determined that probable cause did not exist for Plaintiff's arrest and dismissed the criminal charges against her"]). As a result, this Court may properly consider the official court documents in the criminal proceedings against Plaintiff and the State Court's justification for dismissal of the criminal charge against Plaintiff in *State of North Dakota v. Tonita Cervantes*, Case No. 30-2017-CR-00367, Morton County District Court (dismissed April 27, 2018) ("Criminal Proceeding").

Provided as Exhibit P to the *Second Affidavit of Shawn A. Grinolds*, filed herewith, is a copy of Judge Romanick's *Order Dismissing for Failure to Comply with the Court's Order* filed April 30, 2018 (state index 26) from the Criminal Proceeding. This order pertained to criminal

charges then pending against nine defendants, all of whom were arrested during the incident involving the Plaintiff's arrest at issue in this case. Notably, the express reason why all nine of these criminal cases were uniformly dismissed was as follows:

> \*\*\*
> [¶2]   Defendants was [sic] charged with Physical Obstruction of a Governmental Function on February 22, 2017, with approximately 10 other defendants charged and few had other misdemeanor charges included in citations. All were charged by citation (DE 1 Sojourn File). The citations did not comply with Rule 3(a) North Dakota Rules of Criminal Procedure requiring that the charging document contain "a written statement of the essential facts constituting the elements of the offense charged."
> [¶3]   On November 22, 2017, the Court on its own motion ordered the State to file an amended complaint/information (DE 15 Sojourn File)(Order filed in all files).
> [¶4]   The State did file an amended information on December 14, 2017 (DE17 Sojourn File) and in all other files. This information simply tracks the statue [sic] as did the citation with specific language to put the Defendant on notice or to comply with Rule 3(a) NDRCrimP.
> \*\*\*
> [¶7]   The bottom line is the State has failed to follow the Court's order and file an information complying with Rule 3(a) North Dakota Rules of Criminal Procedure. Six (6) months have passed since the Court issued its order requiring compliance with Rule 3(a).
> [¶8]   The Court has allowed more than sufficient time for the State to comply and it has not.
> [¶9]   The Court is really left with no alternative other than to DISMISS the charges in all of these cases for the State's failure to comply with the Court's order and simply file an information/complaint setting out the specific acts the defendant is charged with committing putting the Defendant's on notice as the rule requires.

(Exh. P at ¶¶ 2-4, 7-9.) Notably, Judge Romanick did not make any determination that the arrest of any criminal defendant, including Plaintiff, lacked probable cause. Instead, the criminal cases were dismissed for failure to set out the specific acts each defendant was charged with committing to put them on notice as required by N.D. R. Crim. P. 3(a). In other words, the charging document was procedurally defective. In the present civil case, Plaintiff's admissions provide the underlying circumstances establishing the existence of probable cause to arrest.

As discussed in Defendants' Principal Brief, probable cause to arrest Plaintiff is fatal to Plaintiff's claims in Count I (First Amendment), Count II (Fourth Amendment Unreasonable

6

Seizure, Arrest and Imprisonment), Count IV (Fourth Amendment malicious prosecution), Count V (First, Fourth and Fourteenth Amendment Claims against Kirchmeier), Count VI (First, Fourth and Fourteenth Amendment Conspiracy), Count VII (derivative *Monell* claim), and Count X [sic] (purported claim for Indemnification under state law).  In addition, arguable probable cause alone would entitled the Individual Defendants to qualified immunity in relation to all such claims as discussed at pages 37-40 of the Principal Brief.  The Supreme Court of the United States has described application of qualified immunity as follows:

> Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time."  "Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unalwful.  In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate."  This demanding standard protects all but the plainly incompetent or those who knowingly violate the law.
>
> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.  The rule must be "settled law", which means it is dictated by "controlling authority" or a robust consensus of cases of persuasive authority.  It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish a particular rule the plaintiff seeks to apply.  Otherwise, the rule is not one that "every reasonable official" would know.
>
> The "clearly established" standard also requires the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.  The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  The requires a high "degree of specificity."  We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.  A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established.  In the context of a warranty arrest, the rule must obviously resolve whether the circumstances with which the particular officer was confronted constituted probable cause.
>
> We have stressed that the specificity of the rule is especially important in the Fourth Amendment context.  Probable cause turns on the assessment of probabilites in particular factual contexts and cannot be reduced to a neat set of legal rules.  It is incapable of precise definition or quantification into percentages.  Given its imprecise nature, officers will often

> find it difficult to know how the general standard of probable cause applies in the precise situation encountered. Thus, we have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. While there does not have to a case directly on point, existing precedent must place the lawfulness of the particular arrest "beyond debate." Of course, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. But a body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause.

*District of Columbia v.* Wesby, 138 S. Ct. at 589-90 (multiple citations and quotation marks omitted). Plaintiff's pure allegations of fact, along with those matter for which judicial notice must or may be taken, establish an Individual Defendants are entitled to qualified immunity.

**II.     Plaintiff's Allegations Concerning Malicious Prosecution Under The Fourth and Fourteenth Amendments (Count IV) Do Not State a Plausible Claim.**

Plaintiff fails to allege a plausible malicious prosecution claim under either the Fourth and Fourteenth Amendments. Prior to the Supreme Court of the United States decision in *Thomas v. Clark*, 142 S. Ct. 1332 (2022), the Eighth Circuit did not recognize a claim under § 1983 for malicious prosecution. *See e.g. Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) ("It is well established in this circuit that an action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury." (citations and quotation marks omitted).) Therefore, even assuming Plaintiff has alleged a plausible claim of malicious prosecution actionable under § 1983, the Individual Defendants would be entitled to qualified immunity as the law was not clearly establish that their alleged conduct of malicious prosecution violated Plaintiff's constitutional rights. *See Wallace v. Taylor*, 2023 WL 2964418 *6 (5th Cir. April 14, 2023) (despite Supreme Court's recognition of Fourth Amendment malicious prosecution claim in *Thomas v. Clark*, defendant officers were entitled to qualified immunity because the Fifth Circuit did not recognize a Fourth Amendment malicious prosecution claim at the time of the events at issue, February 21, 2021).

In addition, Plaintiff's purely factual allegations establish Plaintiff cannot meet the elements of a malicious prosecution claim under the Fourth Amendment, including the requirement of an unreasonable seizure <u>pursuant to legal process</u> (i.e. a seizure resulting from a prosecution, not preceding a prosecution). In *Thomas*, the Supreme Court only addressed the narrow issue of what was required to meet the malicious prosecution common law tort element of a "favorable termination of the underlying criminal prosecution". 142 S. Ct. at 1338. However, the majority in *Thomas* expressly cautioned "[w]e express no view, however, on additional questions that may be relevant on remand, including <u>whether Thompson was ever seized as a result of the alleged malicious prosecution</u>, whether he was charged without probable cause, and whether the respondent is entitled to qualified immunity.." *Id.* at 1341 (underline added for emphasis). The Supreme Court's caution noted the requirement that a Fourth Amendment malicious prosecution claim requires a seizure occur "as a result of the alleged malicious prosecution." The *Thomas* majority also expressly noted in a footnote "[b]ecause this claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff." (*Id.* at fn. 2.) As explained by the Eleventh Circuit, which, unlike the Eighth Circuit, did recognize a Fourth Amendment malicious proseuction claim prior to *Thomas*:

> To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious proseuction, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003), *cert. denied*, 540 U.S. 879, 124 S. Ct. 298, 157 L.Ed.2d 143 (2003).

*Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147, 1159 (11th Cir. 2020). The *Kingsland* Court also recognized that in relation to the Fourth Amendment right to be free from unreasonable seizure element:

> Next, [plaintiff] bears the burden of proving that she was seized in relation to the prosecution, in violation of her constitutional rights. In the case of a warrantless arrest, the

> judicial proceeding does not begin until the party is arraigned or indicted. *See, e.g. Mejia v. City of New York*, 119 F.Supp.2d 232, 254 (E.D.N.Y. 2000) ("[T]he existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the preceding warrantless arrest."). Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was "not one that arose from malicious prosecution as opposed to false arrest." *Id*. At 254 n. 26.

(*Id*. at 1235.) *See Willaims v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) ("Malicious prosecution, in contrast [to a claim of false arrest], requires a seizure 'pursuant to legal process.'" citing *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484, 14 S. Ct. 2364, 129 L.Ed.2d 383 (1994)); *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013) (noting plaintiff correctly styled his claim as for malicious prosecution rather than false arrest "because he was seized after the institution of legal process"): *Yancey v. Tillman*, 2022 WL 5071153 *3 (11th Cir. Oct. 5, 2022) ("Malicous prosecution requires a seizure pursuant to legal process[]" and "[i]n the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted."; plaintiff's pre-arraignment arrest cannot serve as the predicate deprivation of liberty to support Fourth Amendment malicious prosecution claim). Seizures based upon a warrant, or following an arraignment, indictment, or probable cause hearing fall within the category of seizures pursuant to legal process as required under a Fourth Amendment malicious prosecution claim. *Williams v. Aguirre*, 965 F.3d at 1158. "A Fourth Amendment violation involving these seizures occurs 'when legal process itself goes wrong – when for example, a judge's probable-cause determination is predicated solely on a police officer's false statements.'" *Id.* (quoting *Manuel v City of Joliet, Ill*. 580 U.S. 357, 137 S. Ct. 911, 921 (2017) (determining a Fourth Amendment claim may extend beyond initiation of legal process). In the present case, Plaintiff does not allege she was ever seized <u>pursuant to legal process</u>, i.e. pursuant to a warrant, or post arraignment, indictment, or probable cause hearing. Plaintiff admits

10

she was arrested on February 22, 2016 and released from custody the following day on February 23, 2017 after appearing remotely for her Initial Appearance. Therefore, Plaintiff's Fourth Amendment malicious prosecution claim fails as a matter of law.

In addition, in relation to both a Fourth Amendment and Fourteenth Amendment malicious prosecution claim, Plaintiff has also failed to allege facts to establish all of the elements of the North Dakota tort of malicous prosecution (which also must be met as part of Fourth Amendment malicious prosecution claim), which are as follows:

1)  Institution of a criminal proceeding by the defendant against the plaintiff;
2)  Termination of the criminal proceeding in favor of the accused;
3)  Absence of probable cause for the criminal proceeding; and
4)  Malice.

*Norberg v Norberg*, 2017 ND 14, ¶ 24, 889 N.W.2d 889, 896 (citation omitted). In this case, Plaintiff's allegations fail to establish elements 3 (absence of probable cause for the criminal proceeding, as discussed above), and 4 (malice). While Plaintiff has alleged the legal conclusion that Defendants acted with malice (doc. 1 at ¶ 102) when providing a formulaic recitation of the elements of malicious prosecution, the Complaint is devoid of facts to establish Plaintiff's arrest or criminal prosecution was based on malice. The existene of probable cause, or even arguable probable cause for Plaintiff's arrest and prosecution forecloses a finding of malice. Plaintiff fails to allege a plausible claim of malicious prosecution actionable under § 1983.

Plaintiff also fails to allege a plausible malicious proseuction claim under the Due Process Clause of the Fourteenth Amendment. The Fourth Amendment, not Fourteenth Amendment, governs a claim for not only pre-legal process unlawful arrest, but also for post-legal-process unlawful pretrial detention. *See Hoffert v. Westendorf*, 854 Fed.Appx. 93, 96 (8th Cir. 2021), citing *Manuel v. City of Joliet, Ill.*, 580 U.S. at 368. *See Manuel* at 370 (a threshold inquiry in a § 1983 suit requires the court to identify the specific constitutional right at issue; once a trial has

11

occured, the Fourth Amendment drops out, and the Due Process Clause of the Fourteenth Amendment applies.).  Plaintiff has only alleged she was arrested pre-legal process, and therefore, only the Fourth Amendment is implicated and Plaintiff's Fourteenth Amendment malicious prosecution claim fails as a matter of law.  Further, Defendants alleged conduct does not "shock the conscience" as required to support a Fourteenth Amendment Due Process malicious prosecution claim.  *See Brown v. Chiappetta*, 806 F.Supp.2d 1108, 1118-19 (D. Minn. 2011) (applying Substantive Due Process "shocks the conscience" standard to Fourteenth Amendment malicious prosecution claim; noting gross negligence is insufficient to support such claims).

### III.  Plaintiff Fails to State Plausible First, Fourth and Fourteenth Amendment Claims Against Defendant Kirchmeier (Count V) or Plausible *Monell* Claim (Count VII)

Plaintiffs purely factual allegations fail to allege a plausible claim against Sheriff Kirchmeier, Morton County and City of Mandan.  As discussed above, officers had probable cause to arrest Plaintiff in the first instance as Plaintiff was not lawfully present on Highway 1806 and remained despite being advised officers would commence making arrests for violation of the Governor's evacuation order.  Defendants were simply enforcing the Governor's mandatory evacuation order.  Under these circumstances, Kirchmeier had no duty to intervene to prevent a lawful arrest.  Plaintiff also does not allege Kirchmeier was even present on the scene when the incident occurred (he was not), or how he could have possibly intervened, even assuming, arguendo Plaintiff's apprehension and arrest were wrongful, which is denied.

Plaintiff also fails to identify any specific policy or custom created by Kirchmeier, Morton County of City of Mandan under which an alleged constitutional violation occurred, and fails to allege specific facts to establish any alleged violation was caused by a failure to train or supervise officers as required to support a *Monell* claim or claim agaist Kirchmeier. Plaintiff merely alleges, without any factual support, as follows:

20. In its response to the DAPL demonstrations, the Morton County Sheriff's Office, led by Defendant Kirchmeier, and the City of Mandan, employed and maintained polices, practices, and customs which including using excessive fore against and making unlawful arrests of, water protectors.
21. The Morton County Sheriff's Office and the Mandan Police Department also employed and maintained related policies, practices, and customs which included arresting and charging photojournalists who were engaged in protected First Amendment activities including documenting, photographing, filming, recording, and live streaming the activities fo law enforcment and the interaction between law enforcement and protesters.

(Doc. 1 at ¶¶ 20, 21.) These are bare, formulaic and conclusory allegations. They fail to identify any specific policy, practice or custom, and Plaintiff fails to allege facts to establish a pattern or practice of unlawful conduct resulting from any such specific policy, practice or custom.

## IV. Plaintiff Fails to State a Plausible Conspiracy Claim Under The First, Fourth and Fourteenth Amendments (Count VI)

In response to Defendants' argument that Plaintiff has failed to "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement" to violate her constitutional rights, as required under *Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1108 (8th Cir. 2016), Plaintiff proves Defendants' point by simply providing a formulaic recitation of the elements of a conspiracy claim, without alleging any specific overt acts by each of the Defendants to support such conclusory allegations. *See* Plaintiff's Brief (doc. 34) at p. 29. *See, also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (a pleadings factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[]", but conclusory allegations, including "conclusory allegation[s] of agreement at some unidentified point," do not qualify as well-pled factual allegations, and well-pled facts that are "merely consistent with" an entitlement to relief do not suffice). Plaintiff does not allege facts to establish the existence of any agreement between the Individual Defendants to violate Plaintiff's constitutional rights as required to support a

13

conspiracy claim. *See Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1109 (8th Cir. 1989) (a plaintiff alleging conspiracy "must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement."). Plaintiff merely alleges Bitz and Schmeichel, along with other officers, "surrounded, grabbed, seized, arrested and handcuffed Plaintiff with zip ties" (doc. 1 at p. 2) and "brought her to a police van" (*id*. at ¶ 45), whereupon unidentified "Law Enforcement officers transported her to the Morton County Jail complex" (*id*. at ¶ 4). Plaintiff also alleges "Bitz and Schmeichel signed affidavits that resulted in Plaintiff being charged with, and prosecuted for, a criminal offense." (*Id.* at ¶ 69.) There is no allegation any Individual Defendant had any further contact or involvement with Plaintiff, including in relation to her detention at the Morton County Jail Complex or Devils Lake Correctional Facility. (*Id*. at ¶¶ 49-50.) Plaintiff's bare formulaic and conclusory allegations fail to allege a plausible claim of conspiracy. In addition, this derivative claim fails as Plaintiff's arrest was supported by probable cause, as discussed above. Because Plaintiff has failed to plead a plausible violation of her constitutional rights, this derivative claim fails as a matter of law and should be dismissed.

### V.    CONCLUSION

Plaintiff has not alleged a plausible claim of violation of her federal constitutional rights. Even assuming *arguendo* Plaintiff has alleged a plausible violation of her federal constitutional rights (which is denied), the individual law enforcement Defendants are entitled to qualified immunity as their alleged conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Further, the Court should dismiss Plaintiff's claims under North Dakota law on the basis there is no independent cause of action for indemnification under Chapter 32-12.1.

Dated this 16th day of June, 2023

BAKKE GRINOLDS WIEDERHOLT

By: /s/*Shawn A. Grinolds*
Randall J. Bakke (#03898)
Shawn A. Grinolds (#05407)
Special Assistant State's Attorneys for Morton County
300 West Century Avenue
P.O. Box 4247
Bismarck, ND 58502-4247
(701) 751-8188
rbakke@bgwattorneys.com
sgrinolds@bgwattorneys.com

Attorneys for Defendants Morton County, North Dakota, City of Mandan, North Dakota, Kyle Kirchmeier, Tricia Schmeichel, and Dion Bitz.

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, a true and correct copy of the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** was filed electronically with the Clerk of Court through ECF.

ATTORNEYS FOR PLAINTIFF:

Patricia Handlin
Handlin Law Office
1180 N. Milwaukee Avenue, Third Floor
Chicago, Illinois 60642
Phone. 773-255-4331
Handlinlaw@aol.com

Melinda Power
West Town Law Office
2502 W Division
Chicago, Illinois 60622
Phone. 773-278-6706
MelindaPower1@gmail.com

By: /s/ *Shawn A. Grinolds*
SHAWN A. GRINOLDS

15