**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Tonita Cervantes,<br><br>        Plaintiff,<br><br>vs.<br><br>Morton County, North Dakota;<br>City of Mandan, North Dakota;<br>Kyle Kirchmeier, Sheriff of Morton County<br>North Dakota in his individual capacity;<br>Tricia Schmeichel, Mandan Police Officer in<br>her individual capacity;<br>Dion Bitz, Morton County Deputy Sheriff in<br>his individual capacity; and<br>Unknown law enforcement officers John Does<br>1 through 3 in their individual capacities,<br><br>        Defendants. | Case No. 1:22-cv-00211 |

---

## ORDER GRANTING MOTION TO DISMISS

---

### INTRODUCTION

[¶1]  THIS MATTER comes before the Court upon a Motion to Dismiss filed by the Defendants on March 21, 2023. Doc. No. 16. Plaintiff Tonita Cervantes ("Cervantes") filed a Response on May 3, 2023. Doc. No. 34. Defendants filed a Reply on June 16, 2023. Doc. No. 42. For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

### BACKGROUND

[¶2]  The Defendants ask the Court to consider fifteen exhibits filed in support of their Motion to Dismiss. See Doc. Nos. 18, 18-1 through 18-15. The Court exercises its discretion and only considers the facts as alleged in the Complaint at this stage with one limited exception noted below. See Packard v. Darveau, 759 F.3d 897, 905 (8th Cir. 2014) (finding the district court did not abuse

- 1 -

its discretion in declining to consider matters outside the pleadings); <u>Stahl v. U.S. Dept. of Agriculture</u>, 327 F.3d 697, 701 (8th Cir. 2003) (quoting 5A Charles Alan Write & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at 491 (2d ed. 1990) ("The court has complete discretion to determine whether or not to accept any materials beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.")); <u>Skyberg v. United Food and Commercial Workers Intern. Union, AFL-CIO</u>, 5 F.3d 297, 302., n.2 (8th Cir. 1993) ("A court has wide discretion in electing to consider matters outside the pleadings.").

[¶3]    This case involves a protest on February 22, 2017, on North Dakota Highway 1806 near the Backwater Bridge in Morton County, North Dakota, relating to the construction of the Dakota Access Pipeline ("DAPL"). Doc. No. 1, ¶ 23. Wearing a fluorescent green vest and bright yellow poncho, both emblazoned with "press," and burdened with her reporting equipment, Cervantes reported on the protest by photographing, filming, documenting, and live streaming the events. <u>Id.</u> at ¶¶ 25, 27. 28, 29. At the direction of Unified Command, which included Morton County Sheriff Kyle Kirchmeier, law enforcement began to make arrests at the protest site on Highway 1806. Beginning around 4:00 p.m., law enforcement suited in riot gear with batons drawn formed a line across North Dakota Highway 1806 and faced the protestors. <u>Id.</u> at ¶ 30. At that time, Cervantes filmed the protest and stood with a group of journalists. <u>Id.</u> at ¶ 32.

[¶4]    Using a conversational tone of voice, officers notified the protestors and journalists they would begin arresting individuals for violating the North Dakota Governor's eviction order of the Oceti Sakwin camp on United States Army Corps of Engineers' ("Corps") land. <u>Id.</u> at ¶ 31. The Complaint claims this eviction order was not applicable to Highway 1806 at the site of the protest. <u>Id.</u> This references Executive Order 2017-01 ("Evacuation Order"), which became effective on

February 15, 2017—one week prior to this protest. Doc. No. 18-13.[1] The evacuation area was defined as follows:

> **NOW, THEREFORE, I,** Doug Burgum, Governor of the State of North Dakota, order a mandatory evacuation of all persons occupying and residing in the evacuation area, specifically defined as the areas in Morton and Sioux Counties adjacent to the Cannonball River, under the proprietary jurisdiction of the United States Army Corps of Engineers. The evacuation area shall remain in effect even if the United States Army Corps of Engineers redefines the prohibited areas.

Id., pp. 1-2. Importantly, this does not limit the evacuation area to the Oceti Sakowin camp on Corps Lands. See id. Rather, it sets the boundary as the areas adjacent to the Cannonball River, which would include the Backwater Bridge and surrounding area where the protestors and journalists were located. See id. The evacuation period began at 2:00 p.m. on February 22, 2017. Id. at p. 3.

[¶5]    When the announcement was made, several individuals near Cervantes verbally objected that it was unfair to remove members of the press covering the protest. Id. at ¶ 33. In response to this, several plain clothes officers, including Defendants Tricia Schmeichel ("Officer Schmeichel"), Dion Bitz ("Deputy Bitz") and unknown law enforcement officers John Does 1 through 3 ("John Does 1-3"), ran at Cervantes, pushed, seized, and arrested her causing her to feel fear, pain, and discomfort. Id. at ¶¶ 34, 43. The officers used zip ties to handcuff Cervantes. Id. at ¶ 45. Because the ties were so tight, the officers had to cut them off and reapply new zip ties to keep her detained. Id. at ¶ 45. Law enforcement seized Cervantes' camera, phone, photographs, and other photographic equipment. Id. at ¶ 60.

---

[1] The Court considers this one extrinsic document without converting the Motion to Dismiss into a Motion for Summary Judgment because the Executive Order is necessarily embraced by the Complaint. See Glow In One Mini Golf, LLC v. Walz, 37 F.4th 1365, 1370 (8th Cir. 2022) (ordinarily, courts are required to ignore matters outside of the pleadings unless they are "necessarily embraced by the pleadings").

[¶6]     Once arrested, Cervantes informed the officers she was a member of the press. Id. at ¶ 38. Cervantes never advanced or threatened the officers. Id. at ¶ 41. She made no verbal threat. Id. at ¶ 39. She did not threaten physical violence. Id. Nor did she incite violence from others. Id. at ¶ 42. Cervantes did not resist her arrest or attempt to flee or elude the officers. Id. at ¶ 44. Once Cervantes and nine others were arrested, Unified Command ordered the arrests to stop. Id. at ¶ 67. In response to this order, law enforcement stopped making arrests and allowed approximately 40 protestors to continue to demonstrate on Highway 1806. Id. at ¶ 65.

[¶7]     The officers then transported Cervantes to the Morton County Jail. Id. at ¶ 46. During booking, she told the officers she was a photojournalist. Id. at ¶ 47. For holding, Cervantes was placed in a metal caged cell with a cold concrete floor. Id. at ¶ 48. The Complaint describes the cell as similar to a dog kennel. Id. Officers then forced Cervantes to remove all her clothing except her leggings, a light t-shirt, and socks in the presence of both male and female officers. Id. at ¶ 49. This occurred near the garage doors which let in "howling sub-zero wind blowing" into the jail when opened. Id.

[¶8]     Several hours after booking, Cervantes was transported to the Devils Lake Correctional Facility, still wearing only her one layer of clothing and with her hands cuffed. Id. at ¶ 50. When Cervantes arrived in Devils Lake, she asked to make a phone call, but the officer[2] denied her request allegedly stating, "criminals don't have rights." Id. at ¶ 52. According to the Complaint, Cervantes "was given only a blanket and a hard plastic device used to drag dead bodies out of the cellblock, on the floor on which to sleep." Id. Cervantes was not fed until close to midnight and

---

[2] Neither this officer, any officer of the Devils Lake jail facility, nor the City of Devils Lake are named as parties party in the Complaint.

was only served iceberg lettuce and a small packet of dressing. Id. at ¶ 53. She asked officers several times for the protein bar in her backpack. Id.

[¶9]    The next day, on February 23, 2017, Cervantes had her initial court appearance of the charge of physical obstruction of a government function. Id. at ¶ 54. She was released after the hearing and law enforcement refused to return Cervantes' photographic equipment with one officer allegedly telling her "that she 'was in North Dakota now and they could do whatever they wanted to.'" Id. at ¶¶ 54, 61. Cervantes' items were ultimately returned on March 1, 2017, after the National Press Photographer's Association sent a letter demanding the items return. Id. at ¶ 62.

[¶10]   To charge Cervantes, Deputy Bitz and Officer Schmeichel both signed affidavits setting forth facts purporting to show Cervantes engaged in physical obstruction of a government function in violation of Section 12.1-08-01 of the North Dakota Century Code. Id. at p. 2 & ¶ 69. Cervantes hired an attorney for representation in the criminal process. Id. at ¶ 71. After investigating the case, Cervantes' defense counsel filed a motion to dismiss the criminal charges for lack of probable cause. Id. at ¶ 73. On April 27, 2017, North Dakota State District Judge Bruce Romanick granted the motion and dismissed the charges for lack of probable cause. Id. at ¶ 74. Morton County initially filed an appeal but ultimately withdrew the appeal on July 6, 2018. Id. at ¶ 75.

[¶11]   On December 19, 2022, Cervantes filed the instant Complaint alleging eight (8) causes of action: (1) 42 U.S.C. § 1983 – First Amendment Violations (Individual Defendants); (2) 42 U.S.C. § 1983 – Unreasonable Seizure, Arrest and Imprisonment in Violation of the Fourth Amendment to the United States Constitution (Individual Defendants); (3) 42 U.S.C. § 1983 – Excessive Force in Violation of the Fourth Amendment of the United States Constitution (Individual Defendants); (4) 42 U.S.C. § 1983 – Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments of the United States Constitution (Individual Defendants); (5) 42 U.S.C. § 1983 –

First, Fourth and Fourteenth Amendment Claims Against Defendant Kirchmeier; (6) 42 U.S.C. §

1983 – Conspiracy to Deprive Plaintiff of Her First, Fourth, and Fourteenth Amendment Rights;

(7) 42 U.S.C. § 1983 – <u>Monell</u> Liability; and (8) a Claim for Indemnification.

## **DISCUSSION**

### I.      **Motion to Dismiss Standard**

[¶12]   Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). A defendant may file a motion to dismiss asserting the complaint fails to state a claim

upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  To survive such a motion, a complaint

must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A plaintiff

must show that success on the merits is more than a "sheer possibility." <u>Id.</u>  A complaint does not

need detailed factual allegations, but it must contain more than labels and conclusions.  <u>Bell Atl.</u>

<u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

[¶13]   The Court must accept a complaint's factual allegations as true, but it does not need to

accept a complaint's legal conclusions or "formulaic recitation of the elements of a cause of

action." <u>Iqbal</u>, 556 U.S. at 678.  A complaint does not "suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" <u>Id.</u>  However, the determination of whether a complaint

states a claim upon which relief can be granted is a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679.  Dismissal will

not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling him

to relief.  <u>Ulrich v. Pope Cty.</u>, 715 F.3d 1054, 1058 (8th Cir. 2013).

## II.     Qualified Immunity Standard

[¶14]   This case involves several claims for qualified immunity by the individual Defendants. "Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." Ferguson v. Short, 840 F.3d 508, 510 (8th Cir. 2016). "The determination of whether qualified immunity is applicable in given circumstances is one of 'objective reasonableness.'" Herts v. Smith, 345 F.3d 581, 585 (8th Cir. 2003). The issue is not "whether the defendant acted wrongly, but whether reasonable persons would know they acted in a manner which deprived another of a known constitutional right." Id. (citing Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002)).

[¶15]   A two-step inquiry is undertaken to determine if qualified immunity is invoked: "(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) [whether] the right was clearly established at the time of the deprivation." Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012).

[¶16]   Because the defendants bear the burden of proof on this affirmative defense, id., "qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" Watson v. Boyd, 2 F.4th 1106, 1110 (8th Cir. 2021) (citation omitted). However, to defeat an asserted qualified immunity defense, the plaintiffs have the burden to show that their asserted right was clearly established at the time of the alleged violation. Quraishi v. St. Charles Cty., Missouri, 986 F.3d 831, 835 (8th Cir. 2021). At the motion to dismiss stage, defendants must show they are entitled to qualified immunity on the face of the complaint. Elder v. Gillespie, 54 F.4th 1055, 1063 (8th Cir. 2022); Baude v. Leyshock, 23 F.4th 1065, 1071 (8th Cir. 2022); Dadd v. Anoka County, 827 F.3d 749, 754 (8th Cir. 2016).

[¶17]   For the purposes of step two, "clearly established" means "[t]he 'contours of the right must be sufficiently clear that a reasonable official would [have understood] that what he was doing violates that right.'" Quraishi, 986 F.3d at 835 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "This generally requires a plaintiff to point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer['s] conduct in the specific circumstances at issue." Martin v. Turner, 73 F.4th 1007, 1010 (8th Cir. 2023) (quotation marks omitted) (quoting Graham v. Barnette, 5 F.4th 872, 887 (8th Cir. 2021)).   "We . . . look to all available decisional law, including decisions from other courts, federal and state, when there is no binding precedent in this circuit." Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002). While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." White v. Pauly, 137 S. Ct. 548, 551 (2017) (citations omitted). In other words, when there is no directly controlling authority, courts look to whether there is "a robust 'consensus of cases of persuasive authority.'" Ashcrof v. al-Kidd, 563 U.S. 731, 741-42 (2011) (quoting Wilson v. Layne, 526 U.S. 603, 617 (2011)). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning so long as the unlawfulness is apparent." Dean v. Searcey, 893 F.3d 504, 518 (8th Cir. 2018), cert. denied, 139 S. Ct. 1291, 203 L. Ed. 2d 414 (2019).

[¶18]   The Court will address which step in the qualified immunity analysis it will address first when discussing each claim.

### III.   Count One: 42 U.S.C. § 1983 – First Amendment Violations (Individual Defendants)

[¶19]   The Complaint alleges the individually named Defendants violated Cervantes First Amendment rights. According to the Complaint, Cervantes was engaged in constitutionally protected conduct—namely, photojournalism activities—and was imprisoned and prosecuted

- 8 -

without probable cause. Doc. No. 1, ¶ 84. Cervantes also alleges the individually named Defendants failed to intervene to stop the misconduct when they had the opportunity to do so. Id. The Complaint contends the Defendants' actions were intended to silence First Amendment protected free speech activity. Id. at ¶ 85. Cervantes claims she was arrested because the Defendants had a "retaliatory animus" against Cervantes' exercise of her First Amendment rights. Id. at ¶ 86.

[¶20]   The Defendants argue Cervantes did not have a legal right to exercise her constitutional rights at the time and place she was arrested because she was in an area closed to the public by the Governor of North Dakota. By law, according to the Defendants, Cervantes was in trespass. Defendants next argue Cervantes did not have special privileges to be on the bridge and Highway 1806 as a member of the press. Finally, according to the Defendants, Plaintiff was not singled out because she was a journalist. Even if the Court were to find a constitutional violation under the facts of this case, the Defendants argue they are entitled to qualified immunity because the law was not clearly established at the time that their conduct violated the Defendant's First Amendment rights.

[¶21]   Cervantes argues Defendants are not entitled to dismissal of her First Amendment claim because the Complaint sufficiently states a First Amendment retaliation claim. According to Cervantes, she was a photojournalist recording the interaction between protestors and law enforcement. According to Cervantes, the Complaint clearly alleges she was a member of the press present to record the interactions, not engage in protest activities. According to Cervantes, the Complaint sufficiently alleges law enforcement subjected her to physical pain and additional humiliations after her arrest. Cervantes argues she was singled out because she was clearly

identified as a member of the press and law enforcement arrested her only after another individual

complained to law enforcement.[3]

[¶22]    Under the qualified immunity analysis for this claim, the Court will first determine whether

a constitutional violation occurred. See Just v. City of St. Louis, Missouri, 7 F.4th 761, 766 (8th

Cir. 2021) ("We may begin our analysis at—and resolve our analysis on—either prong.");

Quraishi, 986 F.3d at 835 ("This court may consider either prong first."). Plaintiff brings a First

Amendment retaliation claim, which has three elements: (1) the plaintiff engaged in a protected

activity; (2) law enforcement "took adverse action against [plaintiff] that would chill a person of

ordinary firmness from continuing in the activity"; and (3) law enforcement were "motivated at

least in part by the exercise of the protected activity." Green v. City of St. Louis, 52 F.4th 734, 739

(8th Cir. 2022). Relevant to the Court's decision, "to prevail on a First Amendment retaliation

claim, the plaintiff must show that the defendant would not have taken the adverse action but for

harboring 'retaliatory animus' against the plaintiff because of [her] exercise of [her] First

Amendment rights." Mitchell v. Kirchmeier, 28 F.4th 888, 896 (8th Cir. 2022). Use of force or

arrest alone in response to protected activity is not enough to show the necessary "retaliatory

animus." Id. Importantly, "[i]f the response was driven not by 'animus' but by the defendant's

understanding—however mistaken—of his official duties, then it was not 'retaliatory.'" Id.

[¶23]    The Court finds Mitchell v. Kirchmeier instructive. In Mitchell, the Eighth Circuit held

officers did not act with retaliatory animus during a protest at the same location involving hundreds

of protestors. 28 F.4th at 896. A law enforcement blockade had been formed and the roadway was

closed to vehicular traffic. Id. Officers initiated "pushes" to move protestors who were occupying

---

[3] The Court notes the Complaint alleges a First Amendment retaliation claim. Cervantes only
argues the Complaint sufficiently states a claim for First Amendment retaliation.  The Court will
limit its analysis accordingly.

a "protected area." Id. Mitchell was shot with beanbags after standing in law enforcement's way and ignoring a countdown warning. Id. The Eighth Circuit concluded, "[t]he only plausible inference to draw from these allegations is that the officials' response to Mitchell's presence on the bridge was driven by their understanding of their responsibilities as officials charged with maintaining law and order." Id. at 896-97.

[¶24]   The Complaint fails to state a claim for retaliation because the nonconclusory allegations are insufficient to show the officers had the requisite "retaliatory animus." The Complaint alleges approximately fifty protestors and journalists gathered on Highway 1806 near the Backwater Bridge on February 22, 2017, which was closed to vehicles at that time. Around 4:00 p.m., officers in riot gear formed a line across Highway 1806. Central Command ordered the officers on scene to arrest those individuals refusing to leave the area pursuant to the Evacuation Order. After individuals verbally objected to the officers, several officers approached and arrested Cervantes and others. The only plausible inference to be drawn from these facts is the officers were concerned with enforcing the Evacuation Order as required by Central Command. Even if the officers were mistaken in believing they were making lawful arrests, there is no inference of animosity to be drawn from the facts alleged in the Complaint. See id. at 896. ("If the response was driven not by 'animus' but by the defendant's understanding—however mistaken—of his official duties, then it was not 'retaliatory.'").

[¶25]   Because the Complaint fails to state a First Amendment retaliation claim, the individual Defendants are entitled to qualified immunity on this claim. The Court does not need to determine whether the law was clearly established at the time alleged in the Complaint. Accordingly, the Defendant's Motion to Dismiss Count One is **GRANTED**.

IV.     **Count Two: 42 U.S.C. § 1983 – Unreasonable Seizure, Arrest, and Imprisonment in Violation of the Fourth Amendment to the United States Constitution (Individual Defendants)**

[¶26]   The Complaint alleges a Fourth Amendment claim for unreasonable seizure, arrest, and imprisonment of Cervantes. The Complaint contends Defendants Bitz, Schmeichel, and John Does 1-3 lacked probable cause or another lawful basis for arresting and imprisoning Cervantes. The Defendants argue there was probable cause for the officers to believe Cervantes committed a criminal offense. Cervantes contends the state court dismissal of her charges for lack of probable cause show the officers failed to have probable cause to arrest her. Cervantes also contends the officers did not have arguable probable cause to effectuate her arrest.

[¶27]   Officers are entitled to qualified immunity when they have "arguable probable cause" to effectuate the seizure, arrest, and imprisonment of an individual. Quraishi v. St. Charles, County, Missouri, 986 F.3d 831, 836 (8th Cir. 2021). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011). "[T]he existence of probable cause or arguable probable cause depends on the viewpoint of an objectively reasonable officer, not the viewpoint of the particular arresting officer." Ulrich v. Pope County, 715 F.3d 1054, 1060 (8th Cir. 2013).

[¶28]   Assuming there was a mistake as to the scope of the evacuation order, it was objectively reasonable for the arresting officers to believe they had authority to arrest Cervantes for physical obstruction of a government function in violation of N.D.C.C. § 12.1-08-01. "A person is guilty of a class A misdemeanor if he intentionally obstructs, impairs, impedes, hinders, prevents, or perverts the administration of law or other governmental function." N.D.C.C. § 12.1-08-01(1). It is an affirmative defense in North Dakota to show the administration of law or other government

function was not lawful. N.D.C.C. § 12.1-08-01(3). An objectively reasonable officer would have arguable probable cause to arrest Cervantes for physical obstruction of a government function. Officers were ordered by Central Command on February 22, 2017, to begin removing protestors and others from the evacuation zone. Their location on or near the Backwater Bridge was believed to be within that zone. Cervantes, along with the others, refused to move and one verbally defied the officers' lawful commands to leave. Their refusal to comply arguably constituted physical obstruction of a governmental function under N.D.C.C. § 12.1-08-01. The state court's finding a lack of probable cause[4] does not refute this conclusion. The officers' belief they were permitted to enforce the evacuation zone may have been an objective mistake, making the commands to evacuate the area unlawful. But that is not the standard. It was objectively reasonable for the arresting officers to trust Central Command's view that Cervantes and the others were unlawfully in the evacuation zone and their refusal to leave constituted physical obstruction of a government function. It was objectively reasonable for the officers to believe the area was subject to the evacuation order and their actions were, therefore, legal. See Borgman, 646 F.3d at 523 ("Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable.").

[¶29]   Because the officers had at least arguable probable cause to arrest Cervantes, they are entitled to qualified immunity. See Quraishi, 986 F.3d at 836 (noting officers are entitled to qualified immunity if they have at least arguable probable cause to arrest a suspect).  Accordingly, the Defendant's Motion to Dismiss Count Two is **GRANTED**.

---

[4] The Court takes no position on why the state court dismissed for lack of probable cause. For the Court's analysis, this is immaterial because the officers had arguable probable cause.

### V.      Count Three: 42 U.S.C. § 1983 – Excessive Force in Violation of the Fourth Amendment of the United States Constitution (Individual Defendants)

[¶30]    As an initial matter, Cervantes alleges the subsequent actions at the Morton County Jail and Devils Lake Jail impute liability to the named officers. This alleged conduct includes stripping her down to a single layer of clothing, holding her in a cage-like jail cell near a garage door that let in cold temperatures, and not feeding her in Devils Lake until midnight. None of this conduct is or can be directly imputed to the identified Defendants. Because Section 1983 does not permit "tort by association," the Court must look to the Officers' individual use of alleged excessive force to determine whether a claim has been stated. Smith v. City of Minneapolis, 754 F.3d 541, 547-48 (8th Cir. 2014) ("Section 1986 does not sanction torty by association. An officer may be held liable only for his or her own use of excessive force." (citations and quotation marks omitted)). The Court's analysis must, therefore, focus only on the events surrounding Cervantes' arrest.

[¶31]    The Complaint alleges the Defendants engaged in excessive force when placing Cervantes under arrest. Doc. No. 1, ¶¶ 94-98. The Defendants argue the Complaint fails to state a claim for excessive force. Defendants contend the allegations objectively show only a *de minimus* level of force was used under the circumstances. Cervantes argues (1) the crime she was accused of committing was minimal and there was no probable cause to arrest her; (2) she was not a threat to the officers; and (3) she did not actively resist her arrest.

[¶32]    For qualified immunity purposes, the Court begins with whether a constitutional violation occurred. See Just, 7 F.4th at 766 ("We may begin our analysis at—and resolve our analysis on—either prong."). "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth

Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." Id. It appears Cervantes brings her excessive force claim based upon her seizure under the Fourth Amendment.

[¶33]   The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. Amend. IV. "When evaluating a Fourth Amendment excessive force claim under § 1983, [a court] consider[s] 'whether the amount of force used was objectively reasonable under the particular circumstances.'" Kohorst v. Smith, 968 F.3d 871, 876 (8th Cir. 2020) (citation omitted). The Court evaluates "the reasonableness of the force used from the perspective of a reasonable officer on the scene, not with the benefit of hindsight." Id. "This evaluation entails careful consideration of the case's particular facts and circumstances, including: '(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Graham, 490 U.S. at 396). The court may "also consider the result of the use of force." Id.

[¶34]   The use of force in this case was objectively reasonable. The severity of the crime was minimal—a class A misdemeanor under North Dakota law. The Defendant did not pose a specific threat, nor did she actively resist arrest. Thus, the first two Graham factors weigh in favor of a claim for excessive force. However, Cervantes refused to comply with an order from law enforcement, which can be categorized as passive resistance to the commands of the officers. Cervantes was openly defying a command by law enforcement officers to evacuate the area pursuant to the North Dakota Governor's evacuation order. When Cervantes refused to comply, officers approached her and used zip ties to handcuff her, albeit too tightly and causing pain. When informed of the pain and tightness by Cervantes, the officers removed the zip tie and replaced it to

correct the level of tightness. There is no indication in the Complaint the officers ever took her to the ground, had to wrestle her into the restraint, or any other indication force was used. Looking at the totality of the circumstances, the force applied was minimal and objectively reasonable. See Hosea v. City of St. Paul, 867 F.3d 949, 958-59 (8th Cir. 2017) (holding a suspect's passive resistance provided an objectively reasonable basis for an officer to jump on the suspect and force him to the ground) (citing Wertish v. Krueger, 433 F.3d 1062, 1066-67 (8th Cir. 2006) ("When a suspect is passively resistant, somewhat more force may reasonably be required."); Brossart v. Janke, 859 F.3d 616, 626 (8th Cir. 2017) (holding use of a taser was justified when the "response to the command was classically passive aggressive—he moved mere inches"); Mann v. Tarnell, 497 F.3d 822, 824 (8th Cir. 2007) ("The officers testified that they ordered Mann to come under a fence, get down on his stomach, and put his hands behind his back. Although Mann moved to the designated location, he neither got down on his stomach nor placed his hands behind his back, causing the officers to believe that the was resisting arrest.").

[¶35]   Indeed, officers typically must use some amount of force to handcuff a suspect. Chambers v. Pennycook, 641 F.3d 898, 907 (8th Cir. 2011) (quoting Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) ("Handcuffing inevitably involves some use of force."). Likewise, handcuffing also "almost inevitably result in some irritation, minor injury, or discomfort where the handcuffs are applied." Id. The Complaint here only alleges the officers used minimal force and some irritation that was subsequently cured by reapplying the restraint. The officers' actions were objectively reasonable under the circumstances.

[¶36]   Because the use of force was objectively reasonable under the circumstances, the individual Defendants are entitled to qualified immunity on the claim for excessive force. Accordingly, the Defendant's Motion to Dismiss Count Three is **GRANTED**.

**VI.      Count Four: 42 U.S.C. § 1983 – Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments of the United States Constitution (Individual Defendants)**

[¶37]   The Complaint alleges Cervantes was charged for physical obstruction of a government function without probable cause and the prosecution continued with malice. The Defendants argue at the time the allegations occurred, malicious prosecution was not recognized as a constitutional tort by the Eighth Circuit, and they are, therefore, entitled to qualified immunity on this claim. Cervantes claims she has stated a claim for malicious prosecution under Thompson v. Clark, 596 U.S. 36 (2002).

[¶38]   The Court will begin with the clearly established prong of the qualified immunity analysis. See Just, 7 F.4th at 766 ("We may begin our analysis at—and resolve our analysis on—either prong."). Because the law for malicious prosecution was not clearly established on February 22, 2017, the Defendants are entitled to qualified immunity on Count Four. Prior to 2022, malicious prosecution, by itself, was not a claim under Section 1983 because it did not allege a constitutional injury. Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001) ("Moreover, this court has uniformly held that malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury."); Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th Cir. 2000) ("It is well established in this circuit that an action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury."). But this may have changed in 2022 when the Supreme Court may have recognized malicious prosecution as a constitutional injury in Thompson.[5]

---

[5] The Court has doubts as to Thompson's applicability to this case. Plaintiffs allege she was prosecuted with malice and without probable cause for the crime. Doc. No. 1, ¶¶ 99-103. But Thompson resolved a dispute relating to "a Fourth Amendment claim under § 1983 for malicious prosecution, sometimes referred to as a claim for unreasonable seizure pursuant to legal process." 596 U.S. at 42. The issue was over the scope of the common law element of favorable termination

[¶39]   Without deciding whether <u>Thompson</u> created a claim for malicious prosecution independent of a claim for wrongful seizure without probable cause, the law was not clearly established on February 22, 2017, that such a right existed in the Eighth Circuit. Importantly, Cervantes challenges the prosecution process itself, not her wrongful seizure as a result of the alleged malicious prosecution. The established caselaw at that time found there was no independent constitutional claim for malicious prosecution. <u>See</u> <u>Kurtz</u>, 245 F.3d at 758. The officers could not have been put on notice their conduct violated Cervantes' clearly established constitutional right to be free from malicious prosecution because it was not a constitutional right in the Eighth Circuit at that time. <u>See</u> <u>id.</u>; <u>Quaraishi</u>, 986 F.3d at 835 (requiring plaintiff to point to existing precedent with sufficiently similar facts to show the right was clearly established). Accordingly, even if Cervantes pled a valid claim for malicious prosecution, the claim fails because malicious prosecution was not an independent constitutional tort at the time she was arrested and charged with the offense.

[¶40]   Because the law regarding malicious prosecution did not clearly establish an independent claim for malicious prosecution, the Defendants are entitled to qualified immunity on the claim for malicious prosecution. Accordingly, the Defendant's Motion to Dismiss Count Four is **GRANTED**.

---

of the underlying criminal proceeding. <u>Id.</u> The Supreme Court was careful to explain how narrow its decision was, stating, "[w]e express no view, however, on additional questions that may be relevant on remand, including whether Thompson was ever seized as a result of the alleged malicious prosecution, whether he was charged without probable cause, and whether respondent is entitled to qualified immunity." <u>Id.</u> at 49. Cervantes' challenge is to the prosecution itself, not to any seizure that resulted from the prosecution. <u>See</u> Doc. No. 1, ¶¶ 99-103. As such, it appears <u>Thompson</u> may not apply to this case.

### VII.    Count Five: 42 U.S.C. § 1983 – First, Fourth and Fourteenth Amendment Claims Against Defendant Kirchmeier

[¶41]   Count Five of the Complaint alleges Defendant Kirchmeier ordered Cervantes' arrest without probable cause and he did not intervene to stop the arrest. Defendants argue Count Five fails to state a claim because the officers had probable cause to arrest Cervantes and they were following Governor Burgum's order for evacuation. Plaintiffs argue this claim should not be dismissed because they have alleged sufficient facts to show (1) Sheriff Kirchmeier participated in a constitutional violation, (2) failed to intervene, (3) his failure to train or supervise caused the violation, and (4) he created a policy or custom under which the constitutional violation occurred.

[¶42]   For the same reasons set forth above for the other named Defendants, Sheriff Kirchmeier either did not participate in a constitutional violation (because there was none) or he is entitled to qualified immunity (because the law did not clearly establish a constitutional right to be free from malicious prosecution). It is clear from the face of the Complaint and the evacuation order Sheriff Kirchmeier was trying to follow the order of the Governor of North Dakota, not maliciously attempting to violate Cervantes' constitutional rights. See Mitchell, 28 F.4th at 896 ("If the response was driven not by 'animus' but by the defendant's understanding—however mistaken—of his official duties, then it was not 'retaliatory.'"). Therefore, the First Amendment claim against Sheriff Kirchmeier fails.

[¶43]   There was also at least arguable probable cause to arrest Cervantes because the Governor of North Dakota ordered all individuals in the evacuation zone be removed. See Borgman, 646 F.3d at 523 ("Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable."). In addition, as to any claim for malicious prosecution imputed to Sheriff Kirchmeier, the law was not clearly established at that time showing Cervantes had a constitutional right to be free from malicious

prosecution. See Kurtz, 245 F.3d at 758 (holding there is no independent constitutional right to be free from malicious prosecution). As a result, the Fourth and Fourteenth Amendment claims against Sheriff Kirchmeier also fail.

[¶44]   Because the First, Fourth, and Fourteenth Amendment claims alleged against Sheriff Kirchmeier either fail or were not clearly established on February 22, 2017, he is entitled to qualified immunity on Count Five of the Complaint. Accordingly, the Defendants' Motion to Dismiss Count Five is **GRANTED**.

### VIII.   Count Six: 42 U.S.C. § 1983 – Conspiracy to Deprive Plaintiff of Her First, Fourth, and Fourteenth Amendment Rights

[¶45]   Count Six of the Complaint purports to claim the Defendants conspired together to violate Cervantes' constitutional rights. Doc. No. 1, ¶¶ 108-113. Defendants argue Count Six fails to state a claim for civil conspiracy because Cervantes failed to plead a plausible violation of her constitutional rights. Cervantes claims the Complaint adequately states a claim for civil conspiracy to violate her constitutional rights because the Complaint alleges the Defendants violated her constitutional rights and the Defendants worked together in doing so.

[¶46]   A claim for conspiracy under Section 1983 has three elements: (1) defendants conspired together or with others to deprive plaintiff of her constitutional rights; (2) at least one conspirator performed an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. Faulk v. City of St. Louis, Missouri, 30 F.4th 739, 747 (8th Cir. 2022). At the initial pleading stage, bare assertions of conspiracy do not entitle a plaintiff to relief. Id. "[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Holmes v. Slay, 895 F.3d 993, 1001 (8th Cir. 2018). However, "[t]he plaintiff can satisfy this burden by pointing to at least some facts [that] would suggest the defendants reached an understanding to violate his rights." Id. "Evidence of 'an agreement to deprive [a] plaintiff of

constitutionally guaranteed rights' typically is circumstantial." <u>Livers v. Schenck</u>, 700 F.3d 340, 361 (8th Cir. 2012) (citing <u>White v. McKinley</u>, 519 F.3d 806, 816 (8th Cir. 2008)). Moreover, "the plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." <u>Kingsley v. Lawrence Cty., Missouri</u>, 964 F.3d 690, 702 (8th Cir. 2020).

[¶47]   The Court has concluded the Complaint fails to state a claim the Defendants violated Cervantes' constitutional rights. On this ground alone Count Six fails to state a claim. <u>See</u> <u>Zutz v. Nelson</u>, 601 F.3d 842, 850 (8th Cir. 2010) ("As noted above, the appellants have failed to allege such a [constitutional] deprivation. Thus, their original complaint falls short of stating a cause of action. Accordingly, the district court properly dismissed the conspiracy count.").

[¶48]   However, even assuming a constitutional violation may have occurred, the Complaint fails to allege specific facts showing the Defendants conspired together with the intent to deprive Cervantes of her constitutional rights. As noted above, the only plausible intent that can be gleaned from the Complaint is that the Defendants intended to effectuate the purpose of the evacuation order by ordering those present at the protest site to leave. Based upon the Complaint, the officers' intent was, therefore, law and order, not an intent to violate Cervantes' constitutional rights. <u>See</u> <u>Faulk</u>, 30 F.4th at 748-49 (noting the complaint did not contain an allegation "to plausibly suggest [defendant's] discriminatory state of mind." (quoting <u>Iqbal</u>, 556 U.S. at 683.)).

[¶49]   Because the Complaint fails to allege a constitutional violation and the intent of the officers was not to violate Cervantes' constitutional rights, Count Six fails to state a claim upon which relief can be granted. Accordingly, the Defendant's Motion to Dismiss Count Six is **GRANTED**.

### IX.    Count Seven: 42 U.S.C. § 1983 – <u>Monell</u> Liability

[¶50]   The Complaint alleges Defendants Morton County and City of Mandan are liable under <u>Monell v. Dept. of Social Servs. Of City of New York</u>, 436 U.S. 658 (1978). The Defendants argue this claim fails because the Complaint fails to allege a constitutional violation. Cervantes argues the Complaint sufficiently states several claims for constitutional violations and satisfies the requirements of <u>Monell</u>. The Court agrees with the Defendants.

[¶51]   "A municipality may be liable under § 1983 when an official municipal policy or custom caused a violation of a plaintiff's substantive due process rights." <u>Russell v. Hennepin Cty.</u>, 420 F.3d 841, 846 (8th Cir. 2005)." "Municipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability.'" <u>Id.</u> (citing <u>Angarita v. St. Louis County</u>, 981 F.2d 1537, 1546 (8th Cir.1992)). "Before a municipality can be held liable, however, there must be an unconstitutional act by a municipal employee." <u>Id.</u>

[¶52]   The Court has found the Complaint has failed to state a claim for a constitutional violation by any of the individual Defendants. Because of this, Cervantes' claim under <u>Monell</u> necessarily fails to state a claim. See <u>id.</u>; <u>Speer v. City of Wynne, Arkansas</u>, 276 F.3d 980, 986 (8th Cir. 2002) ("We do not suggest that municipal liability may be sustained where there has been no violation of the plaintiff's constitutional rights as a result of action by the municipality's officials or employees."); <u>Schulz v. Long</u>, 44 F.3d 643, 650 (8th Cir. 1995) ("It is the law in this circuit, however, that a municipality may not be held liable on a failure to train theory unless an underlying Constitutional violation is located.").

[¶53]   Accordingly, the Defendant's Motion to Dismiss Count Seven is **GRANTED**.

### X.        Count Eight: Indemnification

[¶54]    Count Eight of the Complaint seeks indemnification under North Dakota law. Under North Dakota law, "[e]ach political subdivision is liable for money damages for injuries when the injuries are proximately caused by the negligence or wrongful act or omission of any employee acting within the scope of the employee's employment or office" under circumstances in which the subdivision would be held liable under North Dakota law if they were an individual person. N.D.C.C. § 32-12.1-03. As noted, a prerequisite for such liability is a wrongful act occurred. Here, the Court has concluded the Complaint fails to allege any constitutional violation. Absent a violation the City of Mandan and Morton County cannot be held liable under N.D.C.C. § 32-12.1-03.

[¶55]    Accordingly, the Defendant's Motion to Dismiss Count Eight is **GRANTED**.

### CONCLUSION

[¶56]    For the reasons set forth above, the Defendants' Motion to Dismiss is **GRANTED**. The Complaint is **DISMISSED with prejudice**.

[¶57]    **IT IS SO ORDERED**.

DATED March 1, 2024.

Daniel M. Traynor, District Judge
United States District Court